| | | |
|---|---|---|
| ATLANTIC BROADBAND FINANCE, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| EQUINOX GLOBAL TELECOMMUNICATIONS, INC. and LADONNA MARTIN, | ) ) ) ) | |
| Defendants. | ) ) ) | |

**THIS MATTER** is before the Court on Plaintiff Atlantic Broadband Finance, LLC's ("Plaintiff") Second Motion for Default Judgment and supporting brief and exhibits. (Doc. No. 24).

## I.    BACKGROUND

### A.    Procedural Background

Plaintiff filed suit against Defendants Equinox Global Telecommunications, Inc. and Ladonna Martin (collectively, "Defendants") on January 15, 2016. (Doc. No. 1: Compl.). Defendants were served with the Summons and Complaint on January 26, 2016. (Doc. No. 5). On February 5, 2016, Plaintiff filed a Motion for Preliminary Relief. (Doc. No. 6). Defendants failed to respond to Plaintiff's Motion, which the Court then granted on March 29, 2016. (Doc. No. 16). Pursuant to Federal Rule of Civil Procedure 12(a)(1)(A)(i), Defendants had until February 19, 2016, to file an

Answer to Plaintiff's Complaint. Defendants failed to file an answer or otherwise make an appearance in this case. Accordingly, on July 13, 2016, this Court ordered Plaintiff to file a Motion for Entry of Default. (Doc. No. 17). Default was entered on July 26, 2016. (Doc. No. 19).

On March 9, 2017, Plaintiff filed its Motion for Default Judgment, (Doc. No. 20), but failed to attach a supporting brief, in violation of Local Rule 7.1(c). See LCvR 7.1(c). On February 22, 2018, this Court denied Plaintiff's Motion for Default Judgment without prejudice to renewal. (Doc. No. 22 at 9). The Court ordered Plaintiff to submit another motion accompanied by (1) a supporting brief connecting [its] allegations to the causes of action they are meant to support and (2) further documentary evidence illustrating the amount Plaintiff sent to Defendants pursuant to their contract. (Doc. No. 22 at 9). On February 5, 2019, the Court issued an Order to Show Cause why Plaintiff had not yet provided the Court with a renewed motion for default judgment along with a supporting brief and exhibits. (Doc. No. 23). The Court gave Plaintiff fourteen days to file a renewed motion and supporting documentation and warned that failure to do so would result in dismissal of all claims against Defendants. (Id.).

In compliance with the Court's Show Cause Order, Plaintiff submitted a New Motion for Default Judgment accompanied with a supporting brief and exhibits on February 19, 2019. (Doc. No. 24). Accordingly, the Court now turns its attention to this Motion today. But first, the Court gives a summary of the facts giving rise to

this suit.

## B.    Factual Background

Plaintiff—a limited liability company organized under the laws of Delaware with its principal place of business in Massachusetts—filed this breach-of-contract, diversity suit against Defendants on January 15, 2016.  (Doc. No. 1 ¶ 1).  In doing so, Plaintiff seeks to recover a money judgment in the amount of $445,224.00, which represents the sum of two payments made by Plaintiff to Defendant Equinox, a North Carolina corporation: (1) a wire transfer of $428,100.00 in June of 2014 and (2) a check for $17,124.00 sent and negotiated in February 2015.  (Doc. No. 1 at 1– 2).  Plaintiff alleges that it made each payment at the direction of Defendant Martin, a resident of Mecklenburg County, North Carolina, who is listed on documents filed with the North Carolina Secretary of State as the president of Defendant Equinox and who has represented herself as the sole owner and director of Defendant Equinox.  (Id. ¶¶ 3–4).  Plaintiff alleges that these "funds were a deposit for the goods and services to be provided by Defendant Equinox for the laying over 170 miles of fiber optic cable through part of South Carolina and Georgia pursuant to a written Dark Fiber TRU Agreement executed in full on May 20, 2014 (the 'Fiber Optic Contract')."  (Id.)  This contract was reviewed and executed between Plaintiff and Defendant Martin, acting on Defendant Equinox's behalf.  (Id. ¶¶ 8–9; Doc. No. 1-1: Fiber Optic Contract at 18).  Plaintiff contends that "[d]espite glimpses of legitimacy, Defendant Equinox was never adequately

capitalized, its corporate formalities were barely established, its business operations were grossly overstated, and the most salient aspects of its business enterprise were expressly misrepresented by Defendant Martin." (Doc. No. 1 at 1–2). Plaintiff believes that Defendant Martin converted Plaintiff's money, "directly or indirectly, for her personal benefit and to prop up the supposed enterprise of Defendant Equinox." (Id. at 2). Plaintiff further alleges in the Complaint that "little to no work has been performed on the Fiber Optic Contract, despite a subsequent invoice from Defendant Equinox, which Plaintiff paid, seeking $17,124 in additional funds." (Id.). Plaintiff asserts that, at Defendant Martin's request, Plaintiff sent a check for that invoice to a new address also in Charlotte, and Defendant Martin negotiated the check in what appears to be her handwriting. (Id.). Plaintiff contends that Defendant Equinox never rendered services under the contract.

Accordingly, Plaintiff filed this breach-of-contract action to recover the money it advanced to Defendant Equinox and to pierce the corporate veil to recover a money judgment against Defendant Martin. (Id. ¶¶ 39–46). Plaintiff believes that Defendant Martin has secreted Defendant Equinox's assets—specifically, the funds paid by Plaintiff—to circumvent the claims of Plaintiff and other creditors. (Id.). By separate motion, Plaintiff filed a Motion for Preliminary Relief for prejudgment attachment to freeze the assets of Defendant Equinox, and to the extent traceable, to Defendant Martin. (Doc. No. 6). On March 29, 2016, the Court granted Plaintiff's Motion and entitled Plaintiff to the following preliminary relief:

- A prejudgment Order of Attachment, freezing up to the amount of $445,224.00, found in any bank account in the name of Equinox Global Telecommunications, Inc. or in any bank account using certain EIN (tax identification numbers) utilized by Defendants;
- A preliminary Order of Garnishment directed to SunTrust Bank, the bank to which Plaintiff had sent funds; and,
- The authority for Plaintiff to provide a copy of the Order along with other information "in order to discover whether and where assets of Defendants may be found so that they may be attached."

(Doc. No. 16 at 5–6). Subsequent to this Order, Plaintiff alleges that it sought information from SunTrust Bank (where Plaintiff wired funds) to discover whether there were assets warranting enforcement of the Prejudgment Order. (Doc. No. 24-2 ¶ 12). Plaintiff further contends that no assets were located and no writ of attachment to Defendants or writ of garnishment to SunTrust was initiated, despite Plaintiff having deposited $1,000.00 for an attachment bond into its counsel's Client Trust Account. (Doc. No. 24-1 ¶ 6). Plaintiff alleges that it was able to confirm from SunTrust's documents that Defendant Equinox received the June 2014 wire, drained Plaintiff's monies from the account through large cash withdrawals, and to payees unrelated to the Fiber Optic Project. (Id. ¶ 7). Plaintiff believes that Defendant Martin has instead used Plaintiff's money to pay personal expenses and to prop up a temporary and false business location for Defendant Equinox. (Id.). To date, Defendants have failed to make any appearance or respond or object to Plaintiff's allegations.

## II. ANALYSIS

### A. Entering default judgment is appropriate because defendants have failed to appear, plead, or otherwise defend against Plaintiff's allegations, and the time for doing so has expired.

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); see also Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the Court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV,

6

Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) ("[A] 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'" (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Here, Defendants have completely failed to appear, plead, or otherwise defend against Plaintiff's allegations—despite having three years to do so. Therefore, the Court has accepted Plaintiff's well-pleaded allegations in the Complaint as true, Ryan, 253 F.3d at 780, and default was entered against Defendants on July 26, 2016. (Doc. No. 19). Subsequently, Defendants have continued to not appear, plead, or respond. Therefore, good grounds exist for

entering default judgment against Defendants.

**B. Plaintiff is entitled to damages in the amount of $445,224.00 with interest at the legal rate from February 2015, as well as the costs of this action.**

If the Court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780–81; Gaines, 635 F. Supp. 2d at 416–17). The Court must make an independent determination regarding damages and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422). While the Court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See EEOC v. CDG Mgmt., LLC, No. RDB-08-2562, 2010 WL 4904440, at *2 (D. Md. Nov. 24, 2010) (citations omitted); EEOC v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723727, at *2 (W.D.N.C. Jul. 8, 2010).

On January 5, 2019, the Court accepted the well-pleaded allegations of Plaintiff's Complaint but requested that Plaintiff submit further documentation of its damages under Rule 55(b)(2) before entering a default judgment and awarding damages to Plaintiff. (Doc. No. 23). In response, Plaintiff submitted an accompanying brief in support of its motion and an affidavit from Thomas J. Gunerman, an attorney employed by Plaintiff who controls, supervises or directs, Plaintiff's business records. (Doc. No. 24-2: Decl. of Thomas J. Gunerman Supporting Pl.'s New Motion for Default J. ¶¶ 1–2). In his affidavit, Mr. Gunerman

alleges that he has specific knowledge of Plaintiff and Defendants' business transactions, agreements, and communications, and he has overseen the investigation and litigation of this suit. (Id. ¶ 3). Mr. Gunerman avows that Plaintiff wired $428,100.00 to the SunTrust account in the name of Defendant Equinox and also sent Defendants a second check in the amount of $17,124.00, which was negotiated by Defendant Martin. (Id. ¶¶ 6, 8). To corroborate these numbers and Mr. Gunerman's testimony, Plaintiff attached documentary evidence from both Defendant Equinox and SunTrust supporting the $428,100.00 figure and confirming that the $428.100.00 was deposited into Defendant Equinox's account on June 6, 2014. (Doc. No. 24-3: Wire Confirmation). Additionally, Plaintiff attached documentary evidence of the second invoice Defendant Martin sent Plaintiff on February 24, 2015 seeking the $17,124.00 payment as well as a copy of the canceled check Plaintiff sent to Defendants. (Doc. No. 24-4: Check Confirmation).

In addition to invoicing for the sums, Defendant Martin completed two W-9 forms, at Plaintiff's request, and provided two different EIN (tax identification numbers), both of which appear to have no relation to Defendant Equinox, Defendant Martin, or any related entity. (Doc. Nos. 13, 15). Pursuant to the agreement between the parties, the committed delivery date was January 16, 2015. Having no services delivered, Plaintiff, by Notice of Default dated September 15, 2015, demanded Defendant Equinox complete the Fiber Optic Project within 45 days or terminate the Fiber Optic Contract and return the monies Plaintiff had paid

to Defendant Equinox at the direction of Defendant Martin. (Doc. No. 24-2 ¶ 9; Doc. No. 24-5: Notice of Default).

After reviewing the pleadings, Mr. Gunerman's Affidavit, and supporting exhibits providing further documentary evidence of Plaintiff's Second Motion for Default Judgment, the Court is now convinced that a damages award in the amount of $445,224.00 is appropriate. In sum, Plaintiff sent almost $450,000.00 to Defendants and received nothing in return. As Plaintiff aptly notes, the record reflects that Defendants have engaged in conduct more sinister than a mere breach of contract; however, that is the sole relief requested by Plaintiff, and the Court accordingly awards such relief today.

## III.  CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.  Plaintiff's Second Motion for Default Judgment, (Doc. No. 24), is **GRANTED**;

2.  The Clerk of Court shall **enter default judgment** in Plaintiff's favor against both Defendants in the amount of **$445,224.00**, with interest at the legal rate from February 16, 2015, plus the full costs of this action; and

3.  The Clerk of Court is directed to close this case.

Signed: March 4, 2019

Robert J. Conrad, Jr.
United States District Judge